Bruno v. Wells Fargo Good afternoon. May it please the court. Tim Watson for the appellant Wells Fargo. Well, it strikes me in reading the briefs in this case, it's like the law school case, what is chicken? It seems to me here the question is, what is potential plaintiffs? And I'm not sure either side really goes to that. You're faulted for not citing a number of cases, millions of other cases in your brief. None of them dealt with the arbitration agreement. So they seem to be very different than the situation we have before us. But given the limitation of notice to potential plaintiffs, why would employees who are subject to an arbitration clause be potential plaintiffs? I think that's what this case boils down to. Judge, they're not potential plaintiffs in this case because the undisputed record shows that they have signed a binding arbitration agreement and are prohibited as a matter of law from participating in the case. Therefore, they're not potential plaintiffs. I think you said somewhere that the other side has conceded the binding nature of the arbitration agreement. But in their brief, they're taking issue with that. Where did they concede that there is a binding arbitration agreement here? And the number we're talking about, 4,000 whatever it is, employees signed that arbitration agreement. Everybody wanted employment after the date in question. So I agree, Judge, that they do not officially concede that the arbitration agreement in this case is binding. But they have had numerous opportunities at the conditional certification briefing stage, at the 1292B briefing stage, and before this court. And they have never identified any argument or any reason why it wouldn't be binding. And as we've argued in our brief, they've waived that argument. In addition, prior to conditional certification in this case, there were two individuals who opted into the case who were subject to the arbitration agreement. Those individuals withdrew their consents and filed arbitrations. And then after conditional certification, there were 60 or 61 individuals who opted into the case who were also subject to the arbitration agreement. Every single one of those individuals withdrew their consents to join the case. And some of them, a handful of them, filed arbitration agreements. So I guess twofold, there's never been any argument in the court below or in this court, there's never been any argument identified that would call into question whatsoever the arbitration agreement in this case. Four or five federal courts have found that this agreement is straightforward and subject to arbitration. We cite those cases in our brief. And the court below itself stated that Wells Fargo has shown sufficiently that the HMC, that the arbitration HMC's claims are subject to arbitration. So in this case, on this record, that's not the issue. There's no question about the enforceability of the arbitration agreement. That has never been challenged. You're talking about the enforceability as everybody in that universe? Yes. Well, yes. The evidence shows it is identified a very finite, specific population of individuals. All of those individuals who were hired after December 11, 2015, all of those individuals hired after that date are bound by the arbitration agreement. So what's the problem with the notice then? I'm sorry? What's the problem with the notice? Well, I think that's the issue in the case, Your Honor, is does the court have the discretion to authorize notice to notify individuals of their right to join the case when the employer has shown as a matter of law that those individuals are barred from joining the case? But the district court writes, in addition, we agree this argument is premature. We have no ability to determine whether certain arbitration agreements are enforceable against potential opt-in plans. Isn't the district court operating under an abundance of caution? Send the notices out. Include a notice that if you're subject to arbitration, you can't play ball here. This will save me a lot of time down the road. You're quoting the language from the district court's order granting conditional certification. In the subsequent order, when the court granted permission for us to pursue this interlocutory appeal, the court, after first recognizing that the arbitration agreement that the individuals in question are subject to arbitration, the court wrote, and I'm quoting here, providing notice to individuals who have no ability to join the lawsuit cannot advance the purposes of Section 216 of the Fair Labor Standards Act because those individuals are not potential plaintiffs. I think another point that may be worth mentioning here is you've asked the question in the case, what's wrong with notice? And I think that the two-step process has been around for so long and that the Hoffman-LaRouche decision have been around for so long that it's easy to just think of them as one is the same, but they are separate. The Hoffman-LaRouche deals exclusively with whether, in the first instance, notice is appropriate. Once you make the decision, as you suggested, that what's wrong with just sending notice and then dealing with it later, you've skipped over Hoffman. And now you're... Hoffman doesn't say whether or not it's appropriate. Hoffman talks about the court having the discretion to send out notices in certain cases. It's all about the discretion of the district court. And the argument here is whether or not the court abused the discretion. They're saying that Hoffman is the very case by which the district court had the discretion to send out notice. So just saying Hoffman doesn't help us. Exactly. Well, the question under Hoffman is, does the court have the discretion? And in this situation, as the Fifth Circuit and the Seventh Circuit have both held, a court does not have discretion to send notice to people who are categorically barred from joining the case. So Hoffman is directly on point. Hoffman sets the limits or the boundaries that govern a court's discretion to send notice in the first instance. And in this case... What would be wrong with a notice sent to everybody with language that if you sign an arbitration agreement, you can't play ball? What would be wrong with it is all of the reasons that justify sending notice and all of the reasons that Hoffman gives for not sending notice, as both the Fifth Circuit and the Seventh Circuit found in J.P. Morgan and the bigger case, all of those reasons would be contradicted, would go against sending notice, and sending notice would give rise to or contribute to the potential misuse or dangers of giving notice identified by Hoffman. And I can run through those reasons if you would like. I want you to separate two different things. First of all, in the usual case, the situation will be we're not sure if you're part of the class or not, and so we're sending notice to potential plaintiffs, right? And you're taking the position that courts ought to sort this out before they get to that stage, but there's one way of looking at it where we're in a position we're not sure. But this case is unusual because it's a second situation where the court already made a preliminary determination that they can't be plaintiffs because this is enforceable, but it goes and sends out notice anyway. And so I think that the conflict with the Fifth and Seventh Circuit is really acute and clear if you've done what the district court did here, right? I think there's still a potential conflict with the Seventh Circuit in the first situation, just because you seem to be saying you have to sort it out up front versus the maybe we can wait, we can sort it out. But help us to figure out, you know, you don't need both of these things to win. Why should a court have to sort this out? If the court has sorted it out and says you're not a member, I think there's a much bigger problem with saying you can nonetheless have the power to notify people you already found are not members of the class. But why should the court have to decide that up front? I agree wholeheartedly with everything that you've said. And what you described in this case is more like Bigger, where in Bigger the plaintiff officially … I'm not sure the question helps you. I didn't interpret the question. Maybe I misunderstood the question. Well, maybe I did. I thought the question … That question, the court should not initially decide who's in and who's out, but just send the notice. The court would be able to exercise its discretion to send the notice to everybody and then sort things out down the road. What's unusual in this record is that this court said, well, I'm finding that they're barred, but I'm going to send the notice anyway. But usually that won't be the case. Right. Exactly. And that's exactly right. And that was the situation in the J.P. Morgan case. The plaintiff officially represented to the court that the plaintiff was not contesting the validity of the arbitration agreement in that case, but the court nonetheless then addressed for future cases … Should they have the opportunity to contest that? Should the persons who tentatively signed the arbitration agreement, should they have the opportunity to contest that, which is the opponent's position? They're not being denied … The district court made that finding without any opportunity of the plaintiff's involved to be heard or to contest it. The plaintiff involved will have the opportunity to, if the defendant, if the employer presents evidence of an enforceable or an arbitration agreement that the employer says, we've got an arbitration agreement here, we think it's enforceable, and therefore notice should not be sent to this group of individuals, then yes, the plaintiff has the opportunity to step in and say, well, wait a minute, that's not enforceable for X, Y, and Z reasons, and so therefore notice should go to those individuals. Did I answer your question? I'm not sure. I'm trying to figure out how they'd even know about it, how the absent class people would even know about it. Well, the absent class members may or may not know about it, but the plaintiff, you may be raising a standing question, but the, you know … I think they're coaching it in terms of a due process. Maybe I'm missing something. No, I think you're right. It's a standing and due process are both related in this situation. How would people know about this class if they're not given notice that it's out there? Well, that's, again, that's the question. Are they entitled to notice? And courts deny conditional certification all the time, and in those situations the absent class members don't get notice. And the question, again, is are they entitled to notice? And in this situation, on this record, Hoffman-LaRouche is clear that they're not entitled. I think Hoffman-LaRouche is clear they're not entitled. I'm looking right now at the five steps or tests or inquiries that the court laid out to determine whether or not notice should be given. I don't see it as being all that clear. It's simply a method of sending forth an inquiry the district court should undertake to determine whether or not to give notice. But I'm not sure it's that clear they're not entitled to notice. You can say under the facts here, perhaps especially given what your divas has commented on, the fact that there's an initial determination that they're bound by arbitration agreements. That would be one of the considerations that would come in under the five steps under Hoffman-LaRouche. But Hoffman-LaRouche by itself, I just don't see it as being all that clear that they're not entitled to notice. Well, that's exactly what J.P. Morgan and Bigger go through. They methodically go through all of the reasons for giving notice and all of the reasons for not giving notice to people who are potentially bound by an arbitration agreement. And they come out on the side of no, there's no discretion to do so under Hoffman-LaRouche. And I'm more than happy, either now or in rebuttal, to go into each of those specific reasons if the court would like. No, I understand your argument. I'm looking at the steps now. Okay. Isn't the threshold lower in our circuit? Isn't it just that the conditional certification requires only that the plaintiff make a modest factual showing? That is absolutely the question under the two-step process, and we're not here to challenge the two-step process. But, again, Hoffman and the two-step process are different animals. And what you're suggesting, I believe, is that you go through step one, and it's very modest, and you just go through it, and then you go to step two. But then you, in doing so, you have completely skipped over Hoffman. There's a gazillion cases that talk about the two-step process. I get it. That's assuming there's these enforceable arbitration agreements. Correct. And I think plaintiffs are taking a position that you don't know that yet. Right. Excuse me? I think plaintiffs are taking the position that you don't know that yet, and you have due process issues. That's my guess, is what you're going to tell me. Well, right. But the due process issue is clear. There's not a due process issue. Anytime, the ultimate enforceability of the arbitration agreement is not being determined. All that's being determined at stage one is does notice go out, right? And the plaintiff can make that argument, and the absent class members, their due process rights are not being violated because the ultimate enforceability of the agreement is not being determined. So anytime a court denies conditional certification, you could say, I mean, based on that argument, you could say, oh, you're violating the due process rights because they didn't have an opportunity to be heard. But that's not what's being determined here. To me, that's a clear non-issue. Thank you. I believe Severus. Thank you, Your Honors. Jeff Chivers for Plaintiff Appellate Sandra Bruno, arguing in favor of affirmance of the district court's order authorizing notice to all of Wells Fargo's HMCs, including those that Wells Fargo claims are bound by arbitration agreements. And I think Judge McKee started off by saying that this case is all about whether these are potential plaintiffs. And I think that if it's OK, I'd like to take a step back because Plaintiff Bruno's position throughout this litigation with respect to, for example, whether to put in evidence suggesting that the arbitration agreements were not properly formed with the absent class members or other evidence relating to the validity or enforceability of the arbitration agreements really goes to the overarching legal framework here. And Plaintiff Bruno has stood by that overarching legal framework throughout the district court proceedings and here as well. The district court, when it reached its conclusion that is under review here, which was the order granting conditional certification, applied this court's usual standard for conditional certification, whereby notice is authorized to current and former employees for whom the plaintiff makes a modest factual showing of a factual nexus between the manner in which the employer's alleged policy affected the named plaintiff and the manner in which it affected other employees. That governing legal standard was crafted by this court to implement the general case management power that was recognized in Hoffman LaRoche, and it's been applied routinely by district courts in this circuit in ruling on motions for conditional certification to determine which employees will be given notice of the lawsuit. Do you agree that there is a valid and enforceable arbitration agreement between the employee and the employees that came out under whatever that date that is? I don't have it in front of me right now, but that date was probably six years ago. Did anybody who came in after that did sign and is subject to a valid arbitration agreement? No, Your Honor. We do not make that concession. Never made it in the district court. I believe my colleague acknowledged that we never made that concession in the district court. But the district court made that finding. I don't think so, Your Honor. That goes, I believe, to Judge Bibas's point and question earlier. Did the district court make this finding? And that is not how we read the procedural history below. In the order authorizing notice, which is the order that Wells Fargo has reviewed here, the district court expressly says that issue is premature. It says that issue is premature. We're going to defer that issue until after we send notice so that the individuals whom Wells Fargo claims are bound by those arbitration agreements can come before the court. They'll have notice opportunity to contest. And then there's a line in the district court's subsequent order, which is an order authorizing Wells Fargo to file a petition for interlocutory review. And I think Wells Fargo is saying they want to read that as an order reconsidering the prior decision and making a finding that is contrary to the earlier decision. And that is not how we read that second order. If that were the actual upshot of the district court's second order, where it's authorizing a petition for interlocutory review, the district court presumably would have reached a different outcome, reconsidered its earlier opinion, and not issued notice. And we would have been the ones trying to seek an interlocutory appeal. We construe that passage of the second order, which is only authorizing a petition for interlocutory review, as summarizing Wells Fargo's side of the issue and providing a reason that the district court would stay its order, authorizing notice to all the HMCs, and authorize the petition for interlocutory review that led to this appeal. We do not read the district court's orders as making a finding that there was an enforceable agreement between Wells Fargo and these 3,900 individuals that Wells Fargo has not even identified in the record. It hasn't put in the arbitration agreements. And refuses to disclose these individuals in discovery so that there can be adequate discovery related to these supposed arbitration agreements. So, no, we didn't make the concession in the district court, and our position is that we don't have to engage in that discovery prior to notice. And we base that on this court's conditional certification standard, which has been upheld and applied routinely over the last decade. And Wells Fargo says it's not contesting that legal standard. But let's think for a moment about what Wells Fargo is arguing broadly in this appeal. It doesn't contest, it doesn't suggest that the district court, if it applied the correct legal standard, abused its discretion in the application of that legal standard to the evidence. So I think the way you're reading the record would make a lot of sense, but I want to know what to make of page 6, note 3 of the second opinion. This is JA 2203, that ends with, based on the clear language of the arbitration agreements at this stage, Wells Fargo has sufficiently shown the arbitration HMC's claims are subject to arbitration. The parties to that agreement agreed to be mutually bound thereby. The agreement is a condition of employment. That does look like the court has resolved this issue. Is there a different way to read the, Wells Fargo has sufficiently shown that doesn't render this notices beyond their power? Yes, Your Honor. I think reading that in connection with the overall procedural history of the two orders. If that were the finding by the district court, and he meant it to be a finding on which his rulings were based, as opposed to an articulation of the reasons that he finds substantial ground for disagreement and reasons for interlocutory appeal, then he would have reconsidered his order. He would have reversed it. Because it is directly contrary to what he found in the order granting the motion for conditional certification, in which he said, this is premature. And there is no order reconsidering that prior order. And the two statements, I give you that, certainly, I think they are irreconcilably in conflict.  Look, earlier this afternoon, we had an immigration ruling, which the immigration judge seemed to say one thing and then seemed to say another. And we don't rewrite it so as to harmonize it. We say, there's a problem here, and let's take at face value the part of it that doesn't appear to fit. Well, I think that if we did take the part of it that doesn't fit out of it, it would be what Your Honor is describing as findings in an order that was solely deciding whether to allow a petition for interlocutory review. That is not an order reconsidering the prior order. And if it had been framed as a reconsideration of the prior order, I would have to agree with you. But that is just an order granting permission to file an interlocutory appeal. And throughout that opinion, the judge is summarizing why there are substantial grounds for disagreement, why the other elements of interlocutory review are met. And he doesn't suggest at all that he is reconsidering his prior order granting the motion for conditional certification because the arbitration issue is premature. And even at the end of that second order, he says that his prior order is stayed. He doesn't say the prior order is reconsidered. He says the prior order is stayed. And in so doing, stands by his order granting the motion for conditional certification under which the arbitration issue is premature. And with respect to this supposed concession that Plaintiff Sandra Bruno never made, the key issue still here is what is the procedural framework and why is it that Plaintiff Sandra Bruno stood by this position that she does not have to put in evidence rebutting Wells Fargo's claim that there are arbitration agreements with these 3,900 individuals. And this goes back to, again, the broader legal framework here, which is that this court has time and again issued rulings identifying what the standard is for district courts in ruling on a motion for conditional certification. And think about what Wells Fargo wants this court to rule, which is what the Fifth and Seventh Circuits have essentially ruled. They want this court to rule that the standard for a district court to follow when ruling on a motion for conditional certification is that the district court can authorize notice to all individuals for whom the plaintiff has made a modest factual showing that they are similarly situated by reason of a factual nexus in the policies affecting the named plaintiff and the policies affecting the other employees, unless the employer opposes the conditional certification by claiming that some of the similarly situated employees are bound by arbitration agreements, in which case the district court should apply a burden-shifting framework and a preponderance of the evidence standard to assess the validity and enforceability of the alleged arbitration agreements in order to decide whether to send notice. That's the standard that comes out of the argument that Wells Fargo is making. And that is squarely forbidden by the Supreme Court's recent decision in Morgan v. Sundance. The legal standard that Wells Fargo wants this court to adopt is we have our normal standard for conditional certification, unless the employer asserts that there's arbitration agreements with some of the people who aren't before the court. And then we do something else. That's the upshot of Wells Fargo's argument. And the Supreme Court in Sundance says that is forbidden. It's a very—I mean, this conditional certification in general is a very strange thing, because it's not required. It's not a real certification the way you do in a Rule 23 class action or something like that. It's just a kind of useful, helpful step. So you may be right. I think Morgan does indeed limit our ability to kind of come up with new procedural rules. I just don't understand how the Seventh Circuit kind of got by that. But it's just a strange beast we're dealing with here, which is, I think, part of why the Seventh Circuit was reaching there. Well, absolutely, Your Honor. It is a strange beast, but I think that the reason the Second Circuit could come out the way it did is that Morgan v. Sundance hadn't been decided. And for this court, when it's considering, you know, am I creating a circuit split, absolutely not. Morgan v. Sundance was decided a few weeks ago, in late May. Now, that is after the Fifth and Seventh Circuits issued their decisions in J.P. Morgan v. Biggers. And if those courts had the benefit of Morgan v. Sundance, which I think, as Judge Bevis, you may have said, you know, prohibits courts from crafting these specialized procedural standards where the employer asserts an arbitration agreement, we submit that those cases would come out the other way. And this court does not need to create a circuit split at all here. It can find under Sundance that Sundance abrogates the Fifth and Seventh Circuit's decisions in Biggers v. Facebook, that Sundance prohibits this court from deviating from its ordinary standard for conditional certification, the district court applied this court's ordinary standard for conditional certification, there was no abuse of discretion in the application of that standard to the evidence, and affirm. That is how we see this case after Morgan v. Sundance comes down. Now, with respect to whether these folks are potential plaintiffs, they absolutely are potential plaintiffs. And the argument that Wells Fargo makes under Hoffman v. LaRoche is that notice can't be sent to these HMCs because they're not potential plaintiffs. But the phrase potential plaintiffs in Hoffman v. LaRoche refers to the individuals to whom notice is sent or may be sent because it is discretionary. And Hoffman says proposed plaintiffs. I could be wrong about that. No, I'm sorry. The other cases say proposed plaintiffs. Zabelli and that one are the cases that you cite. Hoffman does say potential plaintiffs. And your Honor, I think, is identifying that there's some dissonance in the language that's used in some of these decisions, and so I think it makes sense to look at the substance. And the substance of potential plaintiffs in Hoffman v. LaRoche is who are the people to whom the district court is authorized to send this notice? And Wells Fargo strains to contend that this court has never clarified the question of exactly to whom is the district court authorized to send notice, but this court has answered exactly that question, most notably in Zavala and Hallie, by establishing the governing standard for conditional certification. The whole point of this court is... There's no arbitration. That's to me the stumbling point here. The difficult part is it's not an analogous case, but there wasn't an issue about whether or not someone had waived the right to take it into court by entering into an arbitration agreement in those cases that you're relying upon. Well, Your Honor, I think what you're describing is a possible reason to create an exception or an extension of this court's governing standard for conditional certification, and that runs into Sundance. Sundance says don't do that. When the employer asserts an argument that there's 3,900 people that it doesn't identify who are bound by arbitration agreements, that is not a basis for changing this court's ordinary standard for conditional certification, which is exactly what Sandra Bruna submitted evidence on and what the district court ruled on. Would this proposed notice include language to potential plaintiffs that if you sign an arbitration agreement, you're not entitled to participate? Well, it absolutely could, Your Honor. And in practice... Solve the problem? We think so, certainly. I mean, it certainly would solve the problem of creating a misleading notice. I think nobody wants to do that. In practice, these notices are negotiated between plaintiffs' lawyers and defense lawyers and then submitted to the court. And if Wells Fargo is concerned, I think we all want to send out a notice that is not misleading. That's probably what it has to do, that the notice has to be neutral, can't suggest anything about the merits of the claim, and that's very clear. Absolutely, Your Honor. I think there's two ways that the notice would not be misleading. One is that as it is customarily drafted, it tells everyone that receives the notice, there's no guarantee you're actually allowed to be in this case. There's lots of reasons that people get the notices. It could be erroneous bookkeeping by the employer. There could be special circumstances. There could be a decertification later in the case. There's lots of reasons that somebody could receive notice, file a claim form, and then get bounced from the case. And really, a motion to compel arbitration after notice is sent is no different than that. Or the notice could provide specific language that says, Wells Fargo has asserted that there's an arbitration agreement binding you, and unless you can contest that arbitration agreement, don't join. So there's definitely ways to handle and avoid being misleading in the notice itself. And this potential plaintiff argument that Wells Fargo makes, it also presupposes that the employees whom Wells Fargo claims are bound by arbitration agreements are in fact so bound. And we make the due process argument in our brief just to make it really clear. At this stage of the proceedings, when the people, the alleged counterparties, are not before the court, the district court cannot rule as a matter of summary judgment, as a matter of law, as a declaratory judgment, any of those things, that these people are actually bound by arbitration agreements. To the extent that there's a suggestion in the district court's order that he has concluded these arbitration agreements exist, they're valid, they're enforceable, that does violate due process. Because the people, the alleged counterparties, are not even before the court, and they don't have an opportunity to respond. Your Honor, I see that my time is up. And so I think I will close it there and submit the rest on the briefs unless there are other questions. Thank you. Last few minutes of your time. I guess I would like to take a step back and talk about what the plaintiff is proposing the rule should be. The plaintiff is proposing that notice can be sent to an entire population of people when we know before sending notice that those people are going to be advised of their right to join a case when they are barred as a matter of law from joining the case. That depends on the language of the word. That depends upon the wording of the notice. The notice does not have to say that at all. The notice simply informs them that a case is being brought. It could be worded in such a way as to say if you signed an arbitration agreement, you are not entitled to join in that state. Or it could say if you've signed an arbitration agreement that you do not dispute something. That language would have to be worked out as counsel suggested. Well, a couple of points to that. First, that argument was never raised at the district court. But which argument? The language of the word? Or the notice, the revisions to the notice to make it acceptable. That argument was never raised. That seems to me to be a given. I'm not sure why they'd have to make that argument. I don't know why they'd have to make it. That's obvious. The judge is not going to send out notice which is misleading or which suggests anything about the merits of the case or whether or not a person receiving the notice has the right to join in the lawsuit. The judge is not going to send that. Well, my point is that at the district court, we briefed this issue fully in this idea of altering the notice language. They suggested sending out in the brief in this case, in this appeal, they suggested altering the notice to have two notice forms. My point is just a simple waiver point that this point was never raised at the district court, even though we raised J.P. Morgan, we raised Bigger. It seems to me the court would have to do it on its own anyhow. The court's going to have to be satisfied with the language of the notice. But the larger point, and back to my first point, is in this case, and this gets back to Judge Bevis' question and what the condition of the record before the court. The court issued its original conditional certification order, and then it's issued its order granting leave to pursue this interlocutory appeal. And the court, as Judge Bevis pointed out, found in footnote three that Wells Fargo has sufficiently shown that the arbitration HMC's claims in this case are subject to arbitration. Can we make of that sufficiently shown? Maybe that's enough that it kind of tees up, raises, or preserves the issue. Does it mean that it's proven for the rest of it? It says, therefore, absent evidence to the contrary, the agreement should be enforced. But, you know, it is a point in the first ruling, the court said we're going to issue a notice, we're going to know. It's just a very strange record here. Well, again, the plaintiff has had every single opportunity at the court below, at the conditional certification stage, at the 1292B stage, and on appeal to give any reason why the arbitration agreement wouldn't be enforceable, and they have never offered that reason. They stand by their position that they can ignore that and simply have the court distribute notice to people who are barred as a matter of law from joining the case. That's no different from sending notice to people who are barred by the statute of limitations. That's absolutely no difference, right? You could send notice to an entire group of people, thousands of people barred by the statute of limitations, and the notice could say, by the way, the employer may assert a defense of timeliness to your claim, just be advised. Hoffman commands that there are some limits. That's how you would it. You're suggesting a notice which kind of is a wink and a nod. The notice could also say it appears to me on this record your claim is barred by the statute of limitations, but we're informing you of this claim nevertheless. That's a wholly different message. Again, you work that out with the district court in the language of the notice. I'm sorry. How is that different, Your Honor? Because if you say, if the notice says your claim may well be barred by the statute of limitations, but we're informing you of the claim, that's a communication to the person, look, your claim is probably gone, as opposed to saying you may well be able to join this suit as opposed, even though you signed an arbitration agreement, which is the way someone could interpret the language that you gave. But in this case, there is no, as the court below wrote, there is no evidence. There's no reason to believe that the arbitration agreement in this case is not enforceable. And the plaintiff is asking for a rule that says an employer can come into the court and demonstrate unequivocally, as Wells Fargo has done here, that its agreement is enforceable and that these people are barred from participating in the case. And the plaintiff can sit back and say, we're not going to talk about that. Even if we have no basis to contest the enforceability of that agreement, we're not going to do anything because we don't have to. And even though it's a simple agreement, like Wells Fargo's agreement, it's been enforced by five separate federal courts. It's never been called into question by anybody, including the plaintiff. We can sit back and say, we're not even going to talk about that agreement, just send notice. That violates Hoffman LaRouche. Hoffman LaRouche says courts do not have that discretion. They don't have unbridled discretion. If they're sending notice to people who are barred as a matter of law, then they have jeopardized judicial neutrality. They have slipped over into the solicitation of claims that is expressly prescribed in Hoffman LaRouche. But how is it soliciting claims if the notice includes language that you can't come here if you signed an arbitration agreement? How is that soliciting claims? Well, in J.P. Morgan and in Bigger, it invites people to join the lawsuit when they have no right or to file hundreds of different litigation procedures, which — That doesn't answer his question. That doesn't answer his question. I'm sorry? That doesn't answer his question. Given the language that he suggested, how does that invite people to solicit claims that the court's going to tell them they probably don't have? I guess the question then would, why would you send notice to people advising them that they are not allowed to join the case? But that's exactly what we would be doing here. I get it. But in the event there might be somebody whose agreement is not enforceable. Well, if that were the case — That's what the question is to me. There may be someone out there whose agreement is not enforceable who needs to know that this is proceeding. Well, that's no different from saying that in this case, for example, the court sent notice to 4,000 people who were HMCs that did not have arbitration agreements. But what's the difference between that and saying, well, there may be people out there who had the HMC — who were in the HMC position but never — but Wells Fargo made a mistake and it wasn't included in the people in there, in the group of people identified by Wells Fargo, so we're going to send notice to everyone at the company just in case somebody might have held the position of HMC. In other words, we're going to send the notice to hundreds of thousands of people on the outside chance that maybe somebody held the HMC position and Wells Fargo made a mistake in identifying the population who did. If there's no more questions, I appreciate the court's time. Thank you very much. Thank you. Can we get a transcript of the argument? And I'll ask Wells Fargo to pay for the cost of the transcript, given the equities here.